Finis Welch, as Successor in Interest v. Faye Monroe, Gayle E. Tittle & David Free











 




IN THE
TENTH COURT OF APPEALS
 

No. 10-00-346-CV

     FINIS WELCH,
     AS SUCCESSOR IN INTEREST,
                                                                         Appellant
     v.

     FAYE MONROE, GAYLE E. TITTLE 
     AND DAVID FREE,
                                                                         Appellees
 

From the 87th District Court
Leon County, Texas
Trial Court # 6254-B
                                                                                                                
                                                                                                         
MEMORANDUM OPINION
                                                                                                                

      H. H. Salter owned property in Leon County. In July 1994, the county surveyor, Appellee
David Free, whom Appellee Faye Monroe, an adjoining landowner, had engaged to sell her land,
persuaded Salter to convey two thirty-foot easements to Monroe. The easements were for a “non-exclusive and irrevocable right of passage in, along, over and across the easement by all modes
and means and at all times and seasons forever, together with all and singular the rights and
appurtenances thereto in anywise belonging . . . .” They also contained general warranties to
Monroe and her “successors.” In August 1994, Monroe conveyed her property along with the
easements to Appellee Gayle Tittle. Salter died in March 1995, and his daughter, Sandra Murray,
became the executrix of his estate. When she noticed a high level of traffic across the easements
she made inquiries of Free, who told her the surrounding land was being subdivided for small tract
development and the easements were the means of ingress and egress to the tracts. 
THE LAWSUIT
      In April 1995, Murray filed suit for a declaratory judgment that the easements are void, and
to rescind the easements and their subsequent conveyance. She claimed (1) that Salter was
mentally incompetent when he signed the easements, and (2) fraud in that Free had told Salter the
easements were for the sole benefit of Monroe. She also sought injunctive relief regarding any
further conveyances by Tittle of any of his property and attorney’s fees. Other than for attorney’s
fees, she did not allege a claim for damages, although her prayer for relief included “Such other
and further relief to which Plaintiff may be entitled in law and in equity.” Tittle countersued,
alleging that, by filing the lawsuit, Murray had cast a cloud over title to his land and had breached
the warranties contained in the easements. Monroe filed a cross-claim seeking indemnity from
Free, in which she asserted that she had originally hired Free to sell her property, and in the
course of that, Free had obtained the easements from Salter on his own volition. She claimed that
she “would have assumed that [Free] would have obtained a conveyance directly to Mr. Tittle .
. . [and she] had no need or desire to obtain a written easement conveyance from Mr. Salter
[because she] had used the access road across Mr. Salter’s property for many years in order to
reach [her] property.”
      Later, Salter’s estate was settled and Murray, as executrix, conveyed the property to herself
because Salter’s will bequeathed it to her. Subsequent events pertinent to this appeal are:
      •    June 28, 1996: Murray, in her own name, sold property to Finis Welch, Appellant,
“subject to” outstanding easements, including the two in question in the lawsuit. Murray
reserved to herself one-half of the mineral rights.
 
      •    June 2, 1997: Tittle filed a “Motion to Abate,” asserting that Murray lost standing to sue
when the property was conveyed to a third party. Monroe joined in the motion.
 
      •    June 13, 1997: A hearing on the motion to abate was held.
 
      •    June 16, 1997: The trial court granted the motion and abated the lawsuit as to Tittle only.
 
      •    July 14, 1997: Welch filed (1) an unacknowledged, unnotarized, “Assignment of Cause
of Action” executed by Murray as executrix, which assigned to Welch “All my right to
pursue” the lawsuit, (2) a “Motion to Reinstate” which asserted that Welch, pursuant to
assignment of the cause of action by Murray, was entitled to go forward as plaintiff, and
(3) a “First Amended Original Petition” identical to the original petition, except that it
named Welch as the plaintiff as “Successor in Interest to Sandra J. Murray, Executor of
the Estate of H. H. Salter.” 
 
      •    July 16, 1997: Welch filed an acknowledged, notarized, “Assignment of Claim,”
executed on July 11, 1997, in which Murray, as executrix, assigned to him all claims
Murray had as executrix against Monroe, Free, and Tittle arising out of the facts giving
rise to the lawsuit.



 
      •    July 28, 1997: Tittle filed another motion to abate the lawsuit (even though the lawsuit
had not been reinstated) in which he asserted (1) the “Assignment of Cause of Action”
filed by Welch failed to comply with section 12.014 of the Property Code, (2) any
assignment to Welch as a “successor in interest” to Murray as executrix is void, because
the appointment of subsequent executors must comply with section 223 of the Probate
Code, and (3) that because when the trial court previously abated the lawsuit, it impliedly
found that Murray no longer had a justiciable interest in the property, and therefore any
subsequent assignment of a non-existent interest must be void.
 
      •    March 20, 1998: A hearing was held on Tittle’s July 28, 1997, motion to abate and
Welch’s July 14, 1997, motion to reinstate. 
 
      •    April 7, 1998: The court signed an order granting Tittle’s motion and abating the lawsuit
as to all three Appellees. The order did not refer to Welch’s motion to reinstate.
 
      •    August 10, 2000: Welch filed a “Motion to Reinstate After Dismissal Without
Prejudice,” even though the lawsuit had not been dismissed at that time. Tittle filed a
response on August 17 which included a complaint of laches against Welch because the
lawsuit had not been pursued in the two years since the abatement order of April 7, 1998.
 
      •    August 18, 2000: A hearing was held on Welch’s motion to reinstate.
 
      •    September 6, 2000: The court signed an “Order of Dismissal” which dismissed the
lawsuit as to all three Appellees.
 
      •    Welch filed a motion for new trial for which no hearing was held. Apparently it was
overruled by operation of law. Tex. R. Civ. P. 329b(c).

ANALYSIS
      This appeal is from the trial court’s final order on September 6, 2000, dismissing the lawsuit. 
The order states in part: “On August 18, 2000, the Court considered Plaintiff’s Motion to
Reinstate,” and “is of the opinion that no change has occurred on this cause that would revive the
abatement granted herein on April 7, 1998 . . . . ACCORDINGLY this cause is in all things
dismissed without prejudice” as to all Appellees. We construe this order as one issued under the
trial court’s inherent power at common law to dismiss a cause for failure to prosecute.


 Villareal
v. San Antonio Truck & Equip., 994 S.W.2d 628, 630 (Tex. 1999).
      The record indicates that the trial court dismissed the lawsuit sua sponte without benefit of
a hearing. As a matter of due process, before a trial court may dismiss a lawsuit under its inherent
power for failure to prosecute, it must set a hearing and notify the plaintiff of the intended
dismissal. Id. at 630; Franklin v. Sherman Indepen. School Dist., 53 S.W.3d 398, 401-03 (Tex.
App.—Dallas 2001, pet. denied) (post-dismissal hearing on motion to reinstate satisfies due
process); Jimenez v. Transwestern Property Co., 999 S.W.2d 125, 128-29 (Tex. App.—Houston
[14th Dist.] 1999, no pet.). The trial court did neither in this case. The record shows only that
a hearing was held on Welch’s motion to reinstate. The failure to give notice and conduct a
hearing on the dismissal requires reversal. Villarreal, 994 S.W.2d at 630.
      The order of dismissal is reversed, and the cause is remanded for further proceedings.
 
                                                                         BILL VANCE
                                                                         Justice

Before Chief Justice Davis,
      Justice Vance, and
      Justice Gray
Reversed and remanded
Opinion delivered and filed February 6, 2002
Do not publish
[CV06]



e: 12pt">      The judgment is affirmed.
 
                                                                               BOBBY L. CUMMINGS
                                                                               Justice

Before Chief Justice Davis,
          Justice Cummings, and
          Justice Vance
Affirmed
Opinion delivered and filed November 19, 1997
Do not publish